FILED
2008 Jun-10  AM 10:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **HOOVER REYNOLDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case: 2:05-cv-02449-VEH-PWG** |
| | ) | |
| **DR. CLYDE VARNER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OF OPINION

The magistrate judge filed a report and recommendation on April 14, 2008, recommending that the defendants' motions for summary judgment be granted and this cause be dismissed with prejudice. (Doc. 38.)  The plaintiff filed objections on May 2, 2008. (Doc. 39.)

In his objections, the plaintiff claims that Defendant McSwain was deliberately indifferent to his serious medical needs when she failed to send him to a hospital on November 25, 2003, immediately following an injury to his hand and, instead, placed him in house arrest for 9 or 10 days.  Although the plaintiff was eventually taken to the hospital on December 2, 2003, he complains that McSwain did not advise prison medical staff that his appointment with the orthopedic specialist had to be

rescheduled, since the specialist was not on duty at the hospital that day.  The plaintiff further argues that the medical treatment he received from Defendant Varner was inadequate.  Lastly, the plaintiff maintains that Defendant Prisoner Health Services, Inc. ("PHS") should be liable for the alleged constitutional violations by its employees.

<u>*Defendant McSwain*</u>

The plaintiff states in his objections, "Plaintiff . . . informed defendant McSwain that he believed his hand was broken and requested that he be sent to the hospital.  Instead of sending plaintiff to the hospital or requesting advice from the nurse on duty at the infirmary, as required by the institutional regulations[,] Defendant McSwain ordered that plaintiff be placed in house-arrest." (Doc. 39 at 4-5.)  The plaintiff's statement implies McSwain immediately placed him in house arrest with no medical evaluation for his injured hand.  To the contrary, the plaintiff acknowledges in his complaint and response to the defendants' motions for summary judgment that Defendant McSwain ordered that he be sent to the infirmary for evaluation *before* he was placed under house arrest.  (Compl. at 3; Doc. 12, Reynolds Aff. at 1; Doc. 30 at 2-3.)  By the plaintiff's own admission, the evaluating nurse informed him that he would have to wait until a doctor could examine his hand and gave him an ice pack in the meantime. *Id.*  The plaintiff does not argue that medical

staff recommended to McSwain that he be escorted to a hospital due to his injured hand and McSwain intentionally refused to comply. *See Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) ("Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference.") There is no indication that Defendant McSwain's failure to escort the plaintiff to a hospital immediately after his injury, of her own accord, with no recommendation from medical staff, constituted deliberate indifference.[1]

The plaintiff next states that there was a "9 or 10 day delay before any attempt was made to treat plaintiff['s] broken hand due to Defendant McSwain['s] order, placing plaintiff in house-arrest." (Doc. 39 at 6.)   A medical need is considered serious when delay results in an inmate suffering "a lifelong handicap or permanent loss." *Monmouth County Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987).  An inmate claiming an unconstitutional delay in medical treatment "must

---

[1]     The plaintiff cites *Robinson v. Moreland*, 655 F.2d 887 (8th Cir. 1981), in which a correctional officer was found to have been deliberately indifferent to a detainee's serious medical needs after the officer refused to obtain medical treatment for the detainee's injured hand other than giving him an ice pack.  The plaintiff's reliance on *Robsinson*, however, is misplaced. In *Robinson*, all medical emergencies sustained at the jail were taken to the county hospital. *Id.* at 889.  Jail regulations provided that an officer must call the duty nurse at the county hospital emergency room and inform him/her of the problem, then take whatever action needed per the instructions of the duty nurse. *Id.*  In *Robinson*, the defendant officer neither sent the detainee to the hospital or requested advice from a nurse on duty concerning the detainee's injured hand. *Id.* at 890.  In the present case, it is undisputed that McSwain ordered that the plaintiff be escorted to the infirmary where he was examined by a nurse prior to being placed in house arrest.  The nurse on duty did not recommend to McSwain or other prison officials that the plaintiff should be escorted to the hospital for emergency treatment.

place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

The plaintiff's medical records indicate medical staff ordered an x-ray of the plaintiff's hand on November 25, 2003; however, it was not until December 2, 2003, that the plaintiff was called to the infirmary for the x-ray. (Doc. 28, Ex. F; Ex. I, McSwain Aff., Ex. B.) The plaintiff has not submitted evidence that this delay was due to the plaintiff's placement in house arrest. Neither is there evidence that McSwain personally interfered with the plaintiff's medical treatment during this time. Indeed, the plaintiff's medical records do not show that the plaintiff submitted a sick call slip concerning his hand while in house arrest and was denied treatment by McSwain or any other prison official.

The plaintiff also suggests that Defendant McSwain's failure to inform medical staff to reschedule the plaintiff's appointment with an orthopedic specialist was an unconstitutional delay in medical treatment. Taking as true the plaintiff's allegation that hospital staff informed McSwain to reschedule the plaintiff's appointment and McSwain failed to notify prison medical staff of the same, McSwain's conduct was, at most, negligent as there is no evidence to support a claim that her conduct was intentional. Negligence, however, is insufficient to support a constitutional claim.

*See Fielder v. Brossard*, 490 F.2d 105 (5th Cir. 1979); *see also Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) (holding that an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment).

Additionally, there is no medical evidence in the record that the plaintiff suffers from a handicap or permanent damage as a result of any delay in medical treatment. Instead, the undisputed medical evidence shows that the plaintiff's previous fracture of the 4th metacarpal appeared to be well healed and the osseous structures of the hand were intact with no acute injury identified.   (Doc. 17, Hudson Aff. at 2.)  Based on the foregoing, Defendant McSwain's motion for summary judgment is due to be granted and the plaintiff's claims against her are due to be dismissed.

## *Defendant Varner*

The plaintiff argues that the treatment he received from Dr. Varner was "inappropriate" as Varner "took no steps to have the plaintiff evaluated by an orthopedic specialist." (Doc. 39 at 8.)  The plaintiff concedes that Defendant Varner: (1) took x-rays of the plaintiff's hand; (2) reviewed the x-rays; (3) informed the plaintiff his hand was broken; and (4) referred the plaintiff to the East Medical Hospital for treatment.  (Doc. 39 at 7.)  The plaintiff complains, however, that Dr. Varner failed to reschedule an appointment for the plaintiff to see an orthopedic

specialist.  This, at most, states a claim that Dr. Varner was negligent in following up on his order that the plaintiff see a orthopedic specialist.  However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment and does not state a claim for relief under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 106.   Moreover, to the extent the plaintiff seeks to hold Defendant Varner liable for medical malpractice, it is well established that "a medical malpractice claim . . . is insufficient to establish liability under 42 U.S.C. § 1983." *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004); *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Accordingly, Defendant Varner's motion for summary judgment is due be granted.

*Defendant PHS*

The plaintiff states, "[I]t was the policy or custom of Defendant PHS, through Defendant Varner, which led to the deliberately indifferent treatment.  Defendant Varner had final authority for policy at Donaldson." (Doc. 39 at 10.)  The plaintiff cannot state a claim against PHS, a corporation, based on the actions of its employees.  Specifically, while a corporation providing prison medical services may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom, such a corporation may not be held liable under § 1983 on the basis of respondeat superior.  *See Buckner v. Toro*, 116 F.3d 450 (11th

Cir. 1997);*Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986); *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978).  Therefore, even if the plaintiff had established that an employee of PHS violated his constitutional right to medical care, he must show that PHS had any policy, practice, or custom that represents official policy that resulted in the alleged discouragement, delay or denial of medical treatment to inmates so as to deny the plaintiff his constitutional rights.  *See Berdin v. Duggan*, 701 F.2d 909, 914 (11th Cir. 1983).  The plaintiff does not explain which PHS policy, practice, or custom, if any, caused his injuries.  As such, PHS' motion for summary judgment is due to be granted.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, and the objections filed by the plaintiff, the Court is of the opinion that the magistrate judge's report is due to be and is hereby **ADOPTED** and his recommendation is **ACCEPTED**.  The Court **EXPRESSLY FINDS** that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law.  Accordingly, defendants' motions for summary judgment are due to be **GRANTED** and this action is due to be **DISMISSED WITH PREJUDICE**.  A Final Judgment will be entered.

**DONE** this the 10th day of June, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge